**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA CLOVIS, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>SIERRA VISTA REALTY LLC, a California Limited Liability Company; SIERRA VISTA CH LLC, a California Limited Liability Company; SIERRA VISTA NASSIM LLC, a California Limited Liability Company; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 1:19-cv-00962-JLT-SKO<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 48) |

California Clovis, LLC contends it properly exercised its option, under its sublease contract, to extend its lease. Defendants argue that California Clovis failed to exercise its rights and the sublease lapsed. Before the Court is Defendants' motion for summary judgment (Doc. 48). For the reasons set forth below, the motion is **GRANTED**.

**I. BACKGROUND**

On March 16, 1988, B&H Clovis Associates[1], predecessor in interests to Defendants,

---

[1] The parties identified various entities that previously held rights under the contract at issue. (*See* Doc. 54-2 at 2-3, ¶¶ 3-9.) A detailed explanation of the relationship among these entities is not necessary, however, because the parties do not dispute the lineage or successive rights under the agreement.

1

entered into an agreement with Mervyn's, predecessor in interest to California Clovis, to sublease a portion of the Sierra Vista Mall, referred to as the "Mervyn's Tract." (Doc. 54-2 at 1, ¶¶ 1-2.) California Clovis obtained rights to sublease the Mervyn's Tract beginning in August 2014. (*Id.* at 2, ¶ 3.) The initial term of the sublease was set to expire on July 31, 2019; however, the sublease agreement contained six separate renewal option periods, each period lasting five years. (*Id.* at 3, ¶ 11.) To exercise a renewal, the agreement required California Clovis to provide notice to Defendants at least nine months prior to the expiration of the lease. (*Id.* at 3-4, ¶ 12.) The parties dispute whether the agreement requires a specific manner to communicate the renewal option and whether California Clovis properly exercised its renewal option. (*Id.* at 4, ¶ 13.)

According to California Clovis, it sent a renewal option notice, via regular U.S. Mail, to Defendant in August 2014. (Doc. 54-2 at 5, ¶ 19.) In December 2018, Traci Tomas, vice president of California Clovis, sent a letter to Defendants to "confirm" its exercise of the next two renewal options. (*Id.* at 6, ¶ 22.) Defendants notified California Clovis on January 18, 2019, that it had not properly exercised its option to renew the lease, and the lease would terminate on July 31, 2019. (*Id.*; Doc. 48-2 at 102-03.) California Clovis initiated this lawsuit on June 7, 2019, to enjoin Defendants from evicting it, to obtain a declaratory judgment that it properly exercised its renewal options, and to recover damages for Defendants' alleged breach of contract by failing to acknowledge California Clovis exercised the renewal options. (Doc. 1 at 10-16.) The parties agree California law controls interpretation of contract. (Doc. 54-2 at 7, ¶ 27.) On April 2, 2021, Defendants filed a motion for summary judgment on all claims. (Doc. 48.)

## II.   LEGAL STANDARDS

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. *Id.*; *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim…") (internal quotation marks, citation omitted).

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary judgment is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show genuine issue of a material fact exists. Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated no genuine issue of material fact exists and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III.   ANALYSIS

California Clovis' claims for relief depend on whether it properly extended its sublease beyond the original July 31, 2019 lease term by exercising one or more of its options for renewal. (Doc. 48-1 at 2; Doc. 54 at 1.) "An option is but an offer which expires by its own terms if it is not accepted within the time prescribed." *Bekins Moving & Storage Co. v. Prudential Ins. Co.*, 176 Cal. App. 3d 245, 251 (1985). In other words, an option is "a unilateral contract under which the optionee, for consideration he has given, receives from the optionor the right and the power to create a contract of purchase during the life of the option." *Erich v. Granoff*, 109 Cal. App. 3d 920, 927 (1980). California Clovis, as the optionee, contends it exercised the next two options to renew its sublease by sending a letter, via regular U.S. mail, in August 2014. (Doc. 54 at 2.) Defendants argue that regular U.S. mail is not an authorized method of communicating the renewal option under the contract and therefore, California Clovis did not timely renew its sublease. (Doc. 48-1 at 5, 7-8.). The parties' dispute essentially depends on whether the sublease agreement prescribed a particular manner by which California Clovis had to notify Defendants of its renewal option notice or whether the presumptions accorded by the mailbox rule permit regular U.S. mail, thus validating the 2014 letter.

**A.   The Mailbox Rule**

According to California Clovis, regular U.S. mail was an acceptable means by which to exercise its renewal option because under the mailbox rule, regular mail is a reasonable and usual

1 means of communicating notice under the agreement. (Doc. 54 at 3-4.) California Clovis also
2 argues the mailbox rule creates a presumption that Defendants received its renewal notice, and
3 Defendants failed to rebut that presumption with sufficient evidence of non-receipt. (*Id.* at 5-7.)
4     The presumptions of the mailbox rule do not apply to agreements that contain express
5 terms that define the means and method for communication under the agreement. Cal. Civ. Code
6 § 1582 ("If a proposal prescribes any conditions concerning the communication of its acceptance,
7 the proposer is not bound unless they are conformed to; but in other cases any reasonable and
8 usual mode may be adopted); *see also Korbholz v. Great-W. Life & Annuity Ins. Co.*, 238 F.
9 App'x 287, 288 (9th Cir. 2007) (citing *Huizar v. Carey*, 273 F.3d 1220, 1223 n.3 (9th Cir. 2001)
10 (emphasis added) ("[W]e recently reaffirmed the common law mailbox rule that, *absent an*
11 *express provision defining this term*, the mailbox rule applies."). Rather, "[i]t is well settled that
12 when the provisions of an option contract prescribe the particular manner in which the option is to
13 be exercised, *they must be strictly followed*." *Palo Alto Town & Country Village, Inc. v. BBTC*
14 *Co.*, 11 Cal. 3d 494, 498 (1974) (emphasis added); *see also Bekins*, 176 Cal. App. 3d at 250
15 ("[C]ourts are strict in holding an optionee to exact compliance with the terms of the option.").
16 On the other hand, if the option contract "merely suggests, but does not positively require, a
17 particular manner of communicating the exercise of the option," a party may confirm acceptance
18 of the option contract by other means. *Palo Alto*, 11 Cal. 3d at 498. Thus, the issue turns on
19 whether the sublease agreement expressly requires or merely suggests a particular manner for
20 communicating exercise of the renewal option.
21 **B.     Interpretation of the Sublease Agreement's Renewal Option**
22     Defendants argue the sublease agreement contains express language that dictates the
23 manner by which California Clovis had to exercise its option because Section 2.3, the provision
24 which grants the right to exercise the option, and Section 12.9, the provision describing how to
25 communicate under the agreement, when read together define a particular method and manner for
26 the renewal notice. (Doc. 48-1 at 3-4.) California Clovis interprets the sublease agreement
27 differently and argues that Section 12.9 does not apply to Section 2.3. (Doc. 54 at 4-5.)
28 ///

5

1. <u>Language of the Sublease Agreement</u>

Under California law, "clear and explicit" language of the contract governs. *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1784 (1993), *as modified* (Sept. 21, 1993) (quoting *Bank of the West*, 2 Cal. 4th 1254, 1264 (1992); *see also* Cal. Civ. Code, § 1638. The "clear and explicit" meaning of the contract retains its "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949-50 (9th Cir. 2002) (citations omitted). In other words, "[i]f the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning." *Id.* "A contract term will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But 'courts will not strain to create an ambiguity where none exists.'" *Westport Ins. Corp. v. N. Cal. Relief*, 76 F. Supp. 3d 869, 879 (N.D. Cal. 2014) (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19 (1995)). Moreover, a "contract must be interpreted as a whole." *RLI Ins. Co. v. City of Visalia*, 297 F. Supp. 3d 1038, 1049 (E.D. Cal. 2018). "The terms of a contract must be construed in a manner that takes into account the context of the language and is consistent with the contract as a whole." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (citations and modifications omitted).

Section 2.3 of the sublease agreement grants California Clovis the option to extend the lease term six times, for a period of five years each. This section states:

> If Tenant elects to exercise any of said options, it *shall* do so by giving Landlord *notice of each such election* at least nine (9) months before the beginning of each additional period for which the Lease Term hereof is to be extended by the exercise of each such option. *If Tenant exercises its option by giving such notice*, the Lease Term shall be automatically extended for the period of time corresponding to such option with the parties' execution of any further documentation.

(Doc. 48-2 at 16-17 (emphasis added).) The sublease agreement contains clear and explicit language that defines the method by which California Clovis must exercise its renewal option— i.e., by giving notice of the election at least nine months before the current period is set to expire. This provision does not outline how California Clovis must give this notice, but Section 12.9 defines the manner for communicating *all* notices under the contract:

6

> Any *notice*, demand, *election*, request, consent, approval, objection, designation or *other communication* that either party is required or desires to give, make or communicate to the other party, a signatory hereto or a Mortgagee *shall* be in writing and shall be given, made or communicated either by personal delivery or by United States registered or certified mail, return receipt requested with postage fully prepaid . . .

(Doc. 48-2 at 42 (emphasis added).) Section 12.9[2] continues,

> Any notice, demand, election, request, consent, approval, objection, designation, including any duplicate original, or other communication so sent shall be deemed to have been given, made or communicated, as the case may be, on the date personal delivery was effected if personally served, or on the date of delivery (or attempted delivery) as shown on the return receipt if delivered by mail.[3]

(*Id*.) Regular mail is not identified as a proper method of giving notice. Moreover, regular mail does not allow for return receipt, so it would fail to comply with the proof of service requirement. Thus, notice by regular mail does not suffice under Section 12.9.

Given that the terms "notice" and "election" appear in the list of communication types subject to the Section 12.9 requirements and it also defines the method for exercising the option to extend the lease under Section 2.3, it follows that Section 2.3 incorporates the communication requirements of Section 12.9 as the manner to exercise the renewal option. By applying a consistent, ordinary meaning to the terms of Sections 2.3 and 12.9, therefore, the sublease agreement obligated California Clovis to notify Defendants of its election to renew the sublease in writing and to deliver ir personally or via registered/certified mail with a prepaid return receipt. California Clovis' 2014 letter, sent through regular U.S. mail and with no return receipt, failed to comply with the clear and explicit requirements to exercise the option under the agreement. *See Buena Vista Biomass Dev., LLC v. Oneto Grp., Inc.*, 2008 WL 2693181, at *3 (E.D. Cal. July 2, 2008) (finding Buena Vista failed to exercise its option contract because it did not make the payment within the prescribed period and in the manner required by the contract, even though Buena Vista partially complied by executing the "Definitive Agreement," stating its intent to exercise its option).

---

[2] Section 12.9 requires the same notice to be sent to six different addressees. (Doc. 48-2 at 42.) The parties do not discuss the obligation to provide notice to each of these addresses.

[3] Because Section 12.9 provides the method of proof of service—either the date of personal service or the date of the return receipt of mail delivery—the argument that the mailbox rule applies, fails.

California Clovis maintains that Section 12.9 of the agreement does not apply to the renewal option provision of Section 2.3. (Doc. 54 at 4-5; Doc. 54-2 at 4, ¶ 13.) First, California Clovis cites to *Palo Alto Alto Town & Country Village, Inc. v. BBTC Company*, 11 Cal. 3d 494 (1974), to support its contention that Section 12.9 is not a mandatory notice provision. (Doc. 54 at 4.) In *Palo Alto*, the notice provision stated the notice "*may* be given in writing either personally or by mail." *Palo Alto*, 11 Cal. 3d at 499 (emphasis added). The provision's use of "may" indicates a permissive suggestion not a prescribed manner of communicating. *Id.*; *see also Gipson v. Davis Realty Co.*, 215 Cal. App. 2d 190, 202 (1963) (noting "may" typically carries a permissive connotation to a layman). Section 12.9, however, specifies that notices "shall" be delivered personally or via registered/certified mail, connoting a mandatory obligation. (Doc. 48-2 at 42.); *Woodbury v. Brown-Dempsey*, 108 Cal. App. 4th 421, 433 (2003) ("Ordinarily, the word 'may' connotes a discretionary or permissive act; the word 'shall' connotes a mandatory or directory duty."); *Barber v. Citimortgage, Inc.*, 2014 WL 12561627, at *6 (C.D. Cal. Sept. 19, 2014) (citing *Woodbury* to interpret contract terms).

Second, California Clovis relies on *In re Crossman's Estate*, 231 Cal. App. 2d 370 (1964), to support its position. (Doc. 54 at 5.) In *Crossman*, the court held that the mailbox rule applied despite express contract language defining the manner for sending "any notice." 231 Cal. App. 2d at 371 (provision stating: "Any notice that either party hereto desires or shall be required to give to the other hereunder shall be given in writing, either delivered personally or sent by prepaid registered mail."). The court reasoned that this notice provision broadly extended to all notices between the parties, even those outside the agreement. *Id.* at 373. The broad inclusion of all notices, regardless of importance, implied a "mere suggestion of a permissive method of communication," rather than a mandatory requirement. *Id.* Moreover, the surrounding language did not emphasize the requirement of "actual delivery." *Id.* The notice provision explained that notice became effective twenty-four hours after the sender deposited the notice in the mail and contained no references to delivery or receipt of then notice. *Id.* When the *optionee*, who had failed to comply with the registered mail provision, subsequently tried to revoke his acceptance and argue no valid contract had been formed, the Court rejected this argument. *Id.* at 371-73.

California Clovis argues Section 12.9 compares to the notice provision of *Crossman*. (Doc. 54 at 5.) Though Section 12.9 shares some similarities with that in *Crossman*, it differs in several significant aspects. On the one hand, both the provision in *Crossman* and the provision in Section 12.9 broadly apply to all communication between the parties, even notices beyond the those required by the agreements, because both provisions refer to communications that parties "desire" to give. (Doc. 48-2 at 42.); *see also Crossman*, 231 Cal. App. 2d at 371. On the other hand, Section 12.9's language differs because it provides an express list of communication types that are required under the contract and subject to the manners and methods prescribed therein, calling attention to the importance of certain types of notices subject to the registered/certified mail requirement. *See Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1035, 1040 (9th Cir. 2011) (applying similar contract interpretation principals under federal law and holding the separate notice provision which required "[n]otices and demands shall be served b[y] certified mail, return receipt requested" applied to the option contract provision). Section 12.9's list includes "notices" and "elections," which correspond to the method of exercising the renewal option under Section 2.3 (Doc. 48-2 at 16-17), whereas *Crossman* merely refers to "any notice" in a more general sense. *Crossman*, 231 Cal. App. 2d at 371.

In further contrast to *Crossman*, Section 12.9 focuses on the necessity of a return receipt and emphasizes actual delivery. The section explicitly requires a "return receipt requested" for all notices by mail. (Doc. 48-2 at 42.) A return receipt provides confirmation of delivery such the sender need not rely on a presumption of delivery necessitated by regular mail. Section 12.9 further emphasizes delivery because the effective date for any notice is the "date of delivery (or attempted delivery) as shown on the return receipt if delivered by mail." (*Id.*) A notice sent via regular mail without a return receipt, provides no effective date as envisioned by section 12.9. In contrast, the effective date of notice sent under the *Crossman* agreement was twenty-four hours from the "time of deposit thereof in any United State depositary for mail," regardless of when or if the mail was delivered. *Crossman*, 231 Cal. App. 2d at 373. Section 12.9 underscores the importance of delivery in both the manner of giving notice and in determining the effective date of that notice.

*Crossman* is also distinguishable because the *optionee*, not the optionor, tried to revoke his acceptance of the option contract based on his own non-conforming notice. *Crossman*, 231 Cal. App. 2d at 371-72. An optionor acts as an offeror to the proposed agreement and has the authority to set exacting requirements and terms of acceptance. *See Hayward Lumber & Inv. Co. v. Constr. Prod. Corp.*, 117 Cal. App. 2d 221, 229 (1953); *Pac. Corp. Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 311 (2014) (citing Restatement Second of Contracts § 60) ("If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract."). Should the offeree accept in a non-conforming manner, the offeror is permitted to treat the "acceptance" as a counteroffer, to which the original offeree may accept or reject. *Id.* ("If the offeror prescribes the only way in which his offer may be accepted, an acceptance in any other way is a counter-offer."). Similarly, if the optionee does not exercise the option with strict compliance, the optionor may reject the attempt or may accept the non-compliant notice and communicate the optionor's acceptance expressly or through conduct. *Collins v. Marvel Land Co.*, 13 Cal. App. 3d 34, 40, 91 (Ct. App. 1970) ("The acceptance of the exercise of the option without objection to the form of the exercise waives any objection to the form of the exercise."); *see also Hayward Lumber*, 117 Cal. App. 2d at 229 ("Since the optionor is bound while the optionee is free to accept or not as he chooses, courts are strict in holding an optionee to exact compliance with the terms of the option."). Thus, in *Crossman*, when the optionee sent regular mail to notice his option, and the optionor expressly confirmed receipt and acknowledged the optionee's notice, the optionor accepted the optionee's non-compliant notice, validly forming the option contract. Contrastingly, Defendants, as the optionor, demanded exact compliance with the option terms and rejected California Clovis' non-compliant notice.

Given Section 12.9's focus on particular types of communications, its focus on the actual delivery of those communications, and California law's contract interpretation principles that apply consistent, ordinary meanings to terms of a contract, the Court finds the requirements of Section 12.9 are incorporated into the option provision, Section 2.3. Accordingly, the sublease contains an express manner by which to exercise the renewal option, and the presumptions under the mailbox rule do not apply.

2. Conduct of the Parties

California Clovis argues that Defendants' conduct demonstrates that registered or certified mail was not a requirement to notice exercise of the renewal option. (Doc. 54 at 7-8.) California Clovis seems to suggest the strict notice requirement was waived.[4] (*Id.* ("Defendants waived any purported defect in the notice, thereby making California Clovis the rightful 'tenant' under the Sublease.").)

      a.    *Interpretation Based on Parties' Conduct*

California Clovis argues that Defendants' conduct shows they treated the option as having been exercised and thus, accepting regular mail as satisfaction of the notice provision of the sublease. (Doc. 54 at 7-8.) California Clovis maintains that Defendants' acceptance of a rent check, dated September 1, 2019, and Defendants' failure to return the check, implies they treated the sublease as extended. (*Id.*) Defendants do not deny or explain why they did not return the funds of the September rent check (Doc. 57-1 at 21, ¶ 8); however, they argue the Court should not consider this argument because California Clovis raised this factual basis for the first time in response to summary judgment. (Doc. 57 at 7-8.)

Generally, "an argument based on new factual bases, akin to one based on new legal theories, [is] improperly raised on summary judgment." *See Pena v. Taylor Farms Pacific, Inc.*, 2014 WL 1330754, at *4 (E.D. Cal. Mar. 28, 2014) (refusing to consider plaintiff's new claim for wage violations based upon new allegations that defendants improperly rounded in their record keeping); *see also Barrilleaux v. Mendocino Cnty.*, 2018 WL 3585133, at *9 (N.D. Cal. July 26, 2018) (refusing to consider evidence of plaintiff's interactions with the security guard because they constitute a "separate legal theory, not merely as further evidence of the County's intent" under her existing deliberate indifference claim). However, plaintiffs may rely on additional facts not included in the complaint, but which support the same theory of liability alleged in the complaint, when responding to summary judgment. *Curtis v. Harrington*, 2018 WL 533922, at *5 (E.D. Cal. Jan. 24, 2018) (citing Fed. R. Civ. P. 56) (finding the newly alleged fact of defendant's

---

[4] Defendants construed California Clovis' argument as one of waiver but did not address the argument that their conduct suggests a different interpretation of the notice provision. (Doc. 57 at 7-9.)

11

personal involvement with the circumstances giving rising to plaintiff's alleged constitutional violations was "not so different" from the facts in the complaint regarding defendant's knowledge of the circumstances). "The Court acknowledges that the line between asserting a new fact in support of a legal theory and asserting a completely new theory of liability is not a clear one." *Id.*

Defendants argue that California Clovis' contention regarding their acceptance of the September rent check constitutes a new factual theory not found in the complaint. (Doc. 57 at 7-8.) The complaint, filed on July 11, 2019, does not include Defendants' subsequent acceptance of the rent check in September 2019. California Clovis included this fact in opposition to summary judgment as evidence that Defendant received its 2014 letter, thus allegedly demonstrating it validly renewed the sublease and obtained rights to the Mervyn Tract. (Doc. 54 at 7-8.) The first cause of action in the complaint seeks declaratory relief that California Clovis renewed its sublease and holds the rights and obligation pursuant to the Mervyn's Ground Sublease. (Doc. 1 at 10-13.) Although California Clovis' precise contention, that Defendants' conduct evidences a valid extended sublease does not appear in the complaint, the Court does not find this evidence so different from California Clovis' liability theories in the complaint as to preclude consideration now.

Even in light of these new factual allegations, however, the interpretation of the notice and option provisions remains the same. "[A] party's conduct subsequent to the formation of a contract may be looked upon to determine the meaning of disputed contractual terms." *Cedars-Sinai Medical Center v. Shewry*, 137 Cal. App. 4th 969, 983 (2006). On the other hand, the Court typically will not consider extrinsic evidence where the contract terms are clear and unambiguous. *In re Yan*, 381 B.R. 747, 755 (N.D. Cal. 2007) ("Parol evidence is inadmissible to vary or contradict a written agreement if the agreement is not ambiguous."). The Court also will not strain to find ambiguity based on extrinsic evidence. *see also In re Bartolo's Estate*, 124 Cal. App. 2d 727, 730 (1954). However, "[w]here any doubt exists as to the purport of the parties' dealings as expressed in the wording of their contract, the court may look to the circumstances surrounding its execution including the object, nature and subject matter of the agreement." *Beneficial Fire & Cas. Ins. Co. v. Kurt Hitke & Co.*, 46 Cal. 2d 517, 524 (1956). As stated above, the Court finds

the explicit and plain meaning of the sublease agreement require written notice through registered or certified mail to exercise the renewal option.

Even assuming the parties' conduct should be considered to interpret the agreement, Court does not find that the totality of the parties' conduct changes the plain meaning. Defendants' conduct after the expiration of the deadline to exercise the option does not clearly demonstrate that it acted as if it had received or accepted California Clovis' letter. On the one hand, Defendants' acceptance of the September rent check and withholding those funds implicate a landlord who believes its property is validly leased. On the other hand, Defendants claim they never received the 2014 letter until the dispute arose in late 2018 or early 2019 and wrote to California Clovis, explaining California Clovis had not timely exercised its option. (Doc. 48-2 at 89, 102-03.)

Neither party cited to relevant authority to support their position on this issue. However, the Court finds *Crossman* instructive. The *Crossman* court considered the parties' conduct to aid its conclusion that the registered mail provision was not mandatory as applied to the option provision. In *Crossman*, the optionor "promptly wrote" to the optionee after receiving the regular mail notice to confirm he received the notice and "acknowledg[e] exercise of the option." *Crossman*, 231 Cal. App. 2d at 372. Approximately a month and half later, the optionee wrote "saying he was not able to perform the agreement then, but was 'continuing to perform on the purchase as soon as possible.'" *Id.* The court concluded the parties' actions surrounding the option notice showed they both treated it as exercised for a "long period." *Id.* at 373.

Compared to the *Crossman* parties' express verbal confirmations and assurances that evidenced a mutual understanding that the regular mail notice had exercised the option, the parties' statements here demonstrate the opposite. California Clovis' own conduct confirms that it did not believe they had timely exercised the sublease option. Internal emails between staff in December 2018 stated, "we were supposed to give notice to use our extension option by 11/1/18 . . . So, it looks like we both dropped the ball in getting this done." (Doc. 48-2 at 98.) To which another California Clovis employee replied "Reach out and play dumb. Let [$] get info first." (*Id.*) California Clovis then sent a letter to Defendants in attempts to exercise the renewal option.

13

(Doc. 48-2 at 100.) Approximately a month later, Defendants sent a letter and responded to California Clovis' attempted late notice stating: "COMM did not receive a renewal exercise notice from California Clovis by the October 31, 2018 deadline . . . Accordingly, California Clovis' attempt to exercise the first renewal option and to extend the term of the Mervyn's Ground Sublease is not effective." (Doc. 48-2 at 103.) Defendants' subsequent acceptance and failure to return the September rent check creates a suggestion they treated the lease as extended. However, this suggestion is flatly contradicted by Defendants' express rejection of the attempted late exercise of the option and by California Clovis' acknowledgement that it missed the deadline.[5] *See Bekins*, 176 Cal. App. 3d at 251 ("There has to be substantial evidence of conduct by the lessor upon which lessee relied in failing to give notice.").

    b. *Waiver*

To the extent California Clovis argues Defendants acceptance of the rent check waived their right to demand exact notice compliance,[6] Defendants argue California Clovis has not provided sufficient evidence to support such argument. Under California law, waiver of an explicit right or obligation requires clear and convincing evidence that the party made an "intentional relinquishment of a known right after full knowledge of the facts." *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 59 (1994) (internal quotation marks omitted); *see also Karbelnig v. Brothwell*, 244 Cal. App. 2d 333, 341 (1966). Waiver is question of the parties' intent, and "[t]o establish such waiver the evidence must indicate a meeting of minds and the intentional forbearance to enforce a right." *Myers v. Herskowitz*, 33 Cal. App. 581, 584 (1917). "Doubtful cases will be decided against waiver." *DRG/Beverly Hills*, 30 Cal. App. 4th at 60.

California Clovis provided a single piece of evidence to suggest waiver—that Defendants accepted and negotiated a rent check, dated September 1, 2019, after the end of the initial lease

---

[5] Indeed, though the Court is confounded by Defendants failure to return the rent check—given Defendants fully admit they have no entitlement to it—this wrongful conduct is not dispositive.

[6] Though Defendants, in their opening brief also address a potential modification argument, California Clovis did not raise this argument in response. Accordingly, the Court need not address the modification issue.

14

term. (Doc. 54 at 7.) California Clovis argues that Defendants' acceptance of the rent check, indicates that Defendants received the 2014 letter and treated it as a valid renewal, thereby waiving any right to argue a defect in the renewal option notice. (*Id.* at 7-8.) In support, California Clovis cites to *EDC Associates Ltd v. Gutierrez*, 153 Cal. App. 3d 167 (1984) and *Kern Sunset Oil Co. v. Good Roads Oil Co.*, 214 Cal. 435 (1931). *EDC Associates* and *Kern* explain that generally "the right of a lessor to declare a forfeiture of the lease arising from some *breach* by the lessee is waived when the lessor, with knowledge of the breach, accepts the rent specified in the lease." *EDC Assocs.*, 153 Cal. App. 3d at 170 (emphasis added); *see also Kern*, 214 Cal. at 447 ("It is true that acceptance of rent alone will not always result in a waiver, but proof of acceptance of rent after condition broken with full knowledge of all the circumstances of said breach has invariably been held sufficient to constitute a waiver of the breach."). The presumption described in these cases applied to a *breach* of an existing lease contract rather than the exercise of an option. California Clovis has not cited any authority that applies this presumption to waiver of explicit terms required for an option contract.

Assuming this presumption applies to contract formation, the *EDC Associates* court clarified that "positive evidence of rejection on the landlord's part" overcomes "the presumption that tender and acceptance of rent creates." *EDC Assocs.*, 153 Cal. App. 3d at 170.[7] Defendants' letter to California Clovis in January 2019 stating it had failed to renew the sublease, serves as an affirmative rejection of California Clovis' non-conforming notice. The letter explicitly notified California Clovis that Defendants had not received a renewal exercise notice and that its lease would expire on July 31, 2019. (Doc. 48-2 at 103.) Defendants' conduct does not support a finding of waiver. *Thriftimart, Inc. v. Me & Tex*, 123 Cal. App. 3d 751, 753-54 (1981) (finding lessor's acceptance of rent from 1973 to 1978 did not waive its right to claim breach under the contract because it notified lessee of the breach in 1967 and continued negotiations with lessee

---

[7] Arguably, the facts presented in the *EDC Associates* case include eviction notices by the landlord which may suggest "positive evidence of rejections." *EDC Assocs.*, 153 Cal. App. 3d at 169. These facts, however, are muddled with the landlord's retaliatory discrimination against plaintiff. *Id.* Regarding the failure to pay rent, the court found no evidence that the landlord had refused tender of rent to rebut the presumption of waiver. *Id.* at 171.

until 1968 to reach a settlement for the breach because "waiver is a matter of intent"). Because waiver requires clear and convincing evidence, California Clovis has not met its burden to prove that Defendants accepted its 2014 letter as renewing the sublease.

**C.      Exercise of Option Demands Exact Compliance**

Having interpreted the notice provision of Section 12.9 applies to the option provision of Section 2.3 and that Defendants did not waive its rights under those provisions, little dispute remains regarding whether California Clovis validly exercised its option. Acceptance of an option demands strict compliance with any terms of the offer, including the manner of notifying exercise of the option. *Palo Alto*, 11 Cal. 3d at 498; *see also Bekins*, 176 Cal. App. 3d at 251 (holding lessee did not properly renew the lease because he failed to "exercise his option, within the time, in the manner and on the terms stated in the lease"). To the extent California Clovis argues the 2014 letter substantially complied or performed the obligations under Sections 2.3 and 12.9, these doctrines do not apply to exercise of an option contract. *Bekins*, 176 Cal. App. 3d at 251 ("The doctrine of substantial performance comes into play only when there exists a binding contract. An option is but an offer which expires by its own terms if it is not accepted within the time prescribed."). Because no genuine dispute of fact remains as to whether California Clovis sent a valid and timely notice of its intent to exercise the option, it cannot claim rights arising under the extended sublease and therefore has no valid claim for relief.

### IV.      ORDER

For the reasons set forth above, the Court **ORDERS**:

1.      Defendants' motion for summary judgment (Doc. 48) is **GRANTED**.

2.      The Clerk of Court is directed to enter judgment in favor of Defendants.

3.      The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:    **October 4, 2022**                                             /s/ Jennifer L. Thurston
                                                                           UNITED STATES DISTRICT JUDGE